## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Brandon D. Brown, | ) | Civil Action No.: |
| | ) | 2:18-cv-01022-DCN-MGB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' OBJECTIONS TO** |
| | ) | **REPORT AND RECOMMENDATION** |
| South Carolina Department of Corrections, | ) | |
| Warden Richard Cothran | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants South Carolina Department of Corrections (SCDC) and retired warden Richard Cothran,[1] individually and in his official capacity as warden of Turbeville Correction Institution (hereinafter "Defendants"), by and through the undersigned counsel, hereby submit these objections, pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, to the Report and Recommendation (ECF Entry No. 62) issued by the Honorable Mary Gordon Baker on April 23, 2020, recommending that Defendants' Motion for Summary Judgment (ECF Entry No. 55) be granted in part and denied in part.

Defendants hereby move for a *de novo* review and reconsideration by the Court of the Report and Recommendation, and assert the following, specific, objections:

---

[1] Defendants would submit that Mr. Cothran retired from his employment at SCDC in December of 2019.  Defendants would ask the Court to take judicial notice of this fact. *See* Rule 201. FROE and http://www.doc.sc.gov/institutions/Turbeville.html

## STATEMENT OF FACTS

Plaintiff Brandon D. Brown initiated this action against Defendants on or about March 19, 2018. ECF Entry No. 1-1. [2] Brown filed his action originally in the Court of Common Pleas for the County of Clarendon. *Id*. In his Complaint, Brown alleges both state and federal claims. *Id*. As a result, Defendants properly and timely removed the matter to the United States District Court for the District of South Carolina on April 13, 2018. *Id*.

In his Complaint, Brown has named SCDC and retired Warden Richard Cothran in his individual and official capacity. *See* Complaint. Specifically, Brown has attempted to raise three separate categories of claims in his Complaint. First, Brown has sued seeking declaratory and/or injunctive relief against SCDC pursuant to S.C. Code § 15-43-30, Rule 65(b), SCRCP, and 42 U.S.C. § 1983. *See* Complaint at 13. Second, Brown has attempted to raise claims of constitutional deprivations pursuant to 42 U.S.C. § 1983 against Defendant Cothran. *See* Complaint at 14-17. Third, Brown has attempted to raise state law tort claims against SCDC. *See* Complaint at 17.

Brown's claims stem from an alleged assault perpetrated against him by his cell mate on November 14, 2017. *See* Complaint at 5. Brown does not even allege any previous issues with his cell mate, nor does he allege why his cell mate allegedly assaulted him on November 14, 2017. *Id* at 5-6. In his deposition, Brown describes that his cell mate "just flipped" one day. ECF Entry No. 55-2 at 7 (Depo. Brown 8:7-24). Importantly, there is no allegation by Brown that the assault in question was gang related. Additionally, Brown acknowledged during his

---

[2] Originally Brown's claims were combined with other inmate claims. However, that matter was severed into multiple, separate cases on August 9, 2019. *See* ECF Entry No. 43.

deposition that he did not have any reason to believe his cell mate posed a danger to him.  *Id* at 10 (Depo. Brown 11:10-17).

Defendants moved for summary judgment on October 21, 2019.  *See* ECF Entry No. 55. The R&R was issued on April 23, 2020, recommending granting in part and denying in part Defendants' Motion for Summary Judgment.  *See* ECF Entry No. 62.  Defendants now submit the following objections to the Magistrate's Report and Recommendation.

## STANDARD OF REVIEW

A federal magistrate makes only a recommendation to the District Court as to the disposition of dispositive motions.  *See* 28 U.S.C. § 636(b)(1).  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the District Court.  *Matthews v. Weber*, 423 U.S. 261 (1976).  The District Court should make a de novo determination of the portions of the report and recommendation to which a party makes a specific objection. Fed. R. Civ. P. 72(b).  The Court may accept, reject, or modify the recommendation in whole or in part.  28 U.S.C. § 636(b)(1).

## OBJECTIONS AND ARGUMENT IN SUPPORT

I.   **The R&R fails to properly address whether Defendant Cothran was deliberately indifferent and ignores the fact that Brown did not submit any evidence to refute the steps Defendants took to counteract any risk of harm or show those steps were unreasonable**

   a.   *The R&R failed to conduct either a reasoned or methodological deliberate indifference analysis*

Although the R&R cites the correct legal standards and test, the Court should review and reconsider the R&R because it failed to include an appropriate analysis on the deliberate indifference prong.  The R&R recommends denying Defendants' Motion for Summary Judgment because (1) "the evidence supports finding a genuine issue of material fact as to whether Cothran had actual knowledge of a substantial risk of harm to Brown and disregarded that substantial

risk." ECF Entry No. 62 at 36. However, in the R&R's analysis of the deliberate indifference

prong, the R&R ignored that fact that (1) Brown did not submit any evidence to refute

Defendants' evidence that they were taking corrective actions and not ignoring the risk of harm

and (2) Brown did not submit any evidence to show the actions Defendants took were

unreasonable.

In order to prevail on a claim for failure to protect from the violence of other inmates in

violation of his Eighth Amendment rights under 42 U.S.C. § 1983, Brown "must satisfy a two-

part test, consisting of both an objective and a subjective inquiry, for liability to attach." *Raynor

v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). The objective inquiry requires the Court to consider

whether Brown has shown "'a serious deprivation of his rights in the form of a serious or

significant physical or emotional injury,' or a substantial risk thereof." *Id.* (quoting *Danser v.

Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014)). The subjective inquiry requires the

individual prisoner to "show that the prison official had a 'sufficiently culpable state of mind,'

which, in this context, consists of 'deliberate indifference to inmate health or safety.'" *Raynor*,

817 F.3d at 127–28 (quoting *Farmer v. US*, 511 U.S. 825, 834 (1994)).

In determining whether Defendant Cothran had actual knowledge of a substantial risk of

harm, the R&R cited the Roth Report to find "a substantial risk of serious harm was

longstanding, pervasive, and well-documented" and, because the Roth Report, which discussed

staffing shortages at Turbeville and other SCDC facilities from 2011 to 2017, there was a

genuine issue of material fact as to whether he had actual knowledge that there was a substantial

risk to inmates who were housed at Turbeville. ECF Entry No. 62 at 36. The Report and

Recommendation includes a detailed analysis of the Roth Report and the fact that it purportedly

showed "Turbeville was severely understaffed and it experienced a high number of contraband

related incidents and incidents of inmate-on-inmate assault," during the time period relevant to the instant case. ECF Entry No. 62 at 36. While Defendants disagree with the conclusion of the R&R regarding whether the evidence supports a finding that Defendant Cothran had actual knowledge of a substantial risk of harm, the R&R discussed evidence in the record to find that a genuine issue of material fact existed as to the first prong of the appropriate analysis.

However, as to the second prong, the R&R failed to conduct a proper analysis and ignored the fact that the only evidence in the record showed Defendants took measures to combat the understaffing, gang, and contraband related issues. In denying Defendants' summary judgment on Brown's claims for failure to protect, supervisory liability, and failure to train, the R&R finds, in conclusory fashion and without citing to any actual evidence in the record, that there was a genuine issue of fact as to whether or not Defendant Cothran was deliberately indifferent to the purported risks of harm. ECF No. 62 at 36 and 40.

The R&R's analysis on the issue of deliberate indifference is essentially that, because Brown got hurt, it is up to a jury to decide if Defendants were deliberately indifferent. Despite setting forth, in quite some detail, all the measures Defendants took to combat these purported issues,[3] the R&R fails to conduct any meaningful analysis of those efforts, and completely fails to explain how anyone could conclude there is a genuine issue of material fact regarding the deliberate indifference prong of this analysis when the unrefuted evidence in this record clearly shows that Defendants were actively working to deal with the issues Brown claims constituted the risk of harm, and therefore were not deliberately indifferent. Instead of conducting the

---

[3] The R&R sets forth numerous deposition excerpts from Defendant Cothran where he is explaining efforts taken to deal with contraband, staffing, and gangs at Turbeville. *See* ECF Entry No. 62 at 28-31. Additionally, the R&R relies heavily on the Roth Report, but ignores the portions of the Roth Report which clearly show Defendants were not indifferent to the purported issues, and instead were actively working to deal with those issues.

required analysis, the R&R states, in conclusory fashion, that there is a genuine issue of fact, despite there being a complete lack of any evidence to refute the evidence showing Defendants were not indifferent to the purported issues. *See* ECF Entry No. 62.

However, this is not an appropriate analysis of the deliberate indifference prong. Instead, the R&R applied a standard more akin to negligence or *res ipsa loquitur* to find that there was a genuine issue of material fact as to whether Defendants were deliberately indifferent because despite the evidence of efforts taken to avert the purported risk of harm, Brown was injured. The R&R ignored (1) the evidence Defendants submitted to show they took steps to counteract the perceived staffing shortages and security-related issues and (2) the fact that Brown did not submit any evidence to refute Defendants' actions, show their actions were not reasonable, or show what more Defendants should have done.

To support her finding that Cothran was deliberately indifferent, the R&R cited to *Rivera v. Mathena*, No. 18-6615, 2019 WL 6133727, at *5 (4th Cir. Nov. 19. 2019), which denied summary judgment because "[o]nce prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted." ECF Entry No. 62 at 40. However, as the R&R noted, Defendants in this case, unlike the *Rivera* case, did not simply ignore the problems with the alleged understaffing and security-related issues at Turbeville. *See* ECF Entry No. 62 at 28-31; *see also* Roth Report at pg. 7, 12 ("Department executive personnel have recognized the concern and have aggressively prioritized hiring and staff retention for the department."), 13 ("Efforts by the department to attract potential new hires in the recent years have been expansive."), 15-19 ("Operational Initiatives in Response to Staffing Levels."), and 235-236 ("Operational Initiatives in Response

to Staffing Levels" in the Turbeville Correctional Portion of the Report). [4]  This plethora of

unrefuted evidence goes essentially ignored by the R&R, despite the fact it clearly shows

Defendants were not indifferent.

Defendants assert the unrefuted record clearly shows that Defendants took corrective

action and/or actions to combat said issues, and there is no evidence in the record that those

actions were not actually undertaken or were somehow unreasonable.  This is not a case where

Defendants simply relied on lack of knowledge of a substantial risk of harm to refute Brown's

allegations.  Instead, there is ample, unrefuted evidence that, even if the Court found Defendant

Cothran had knowledge of a sufficiently serious risk of harm to Brown, Defendants took actions

to counteract any staffing shortages or security-related issues.  Brown failed to submit any

evidence to show Defendants did not actually take those actions like they said they did or to

show that those actions were not reasonable.

The District Court should review and reconsider the R&R because the analysis on the

deliberate indifference prong fundamentally changes the law and renders this prong meaningless.

In *Farmer*, the United States Supreme Court considered and discussed the meaning of deliberate

indifference.  *See generally Farmer*, 511 U.S. 825.  The Court found deliberate indifference

required "something more than mere negligence" and "something less than acts or omissions for

the very purpose of causing harm or with knowledge that harm will result."  *Id.* at 835.  In other

words, conduct satisfying deliberate indifference lies "somewhere between the poles of

---

[4] Defendants would also point out that Brown did not even cite to the Roth Report in his
opposition to Defendants motion for summary judgment, nor has any party placed the Roth
Report into evidence in this particular case.  That said, the R&R did rule in another case that the
Roth Report should be filed on the Court's docket, and it can be found as ECF Docket Entry
number 142 in 2:17-cv-03031-RMG-MGB.  Defendants would concede that Brown did at least
identify Roth as a testifying expert (ECF Entry No. 49).

negligence at one end and purpose or knowledge at the other" and is more akin to "recklessness." *Id.* at 836, 839–40. The Court specifically declined to adopt an objective test for deliberate indifference. *Id.* at 836. Thus, the deliberate indifference standard "focus[es] on what a defendant's mental attitude actually was (or is), rather than on what it should have been (or should be)." *Id.* at 839. The Court specifically explained prison officials who responded reasonably to a risk cannot be held liable under the Eighth Amendment **even if the harm was not ultimately averted** because they have the "unenviable task of keeping dangerous men in safe custody under humane conditions. *Id.* at 844–45 (quoting *Spain v. Procunier*, 600 F.2d 189, 193 (9th Cir. 1979)). Thus, the Court noted the Eighth Amendment required "reasonable safety," not absolute safety. *See id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)).

The R&R's finding that Defendant Cothran was deliberately indifferent, despite the only evidence in the record showing Defendants took steps to counteract any perceived staffing shortages and security-related issues, because Brown was still allegedly assaulted on November 14, 2017, essentially eliminates the entire second prong of the analysis. Under the R&R's current analysis of the law, a defendant would never be able to obtain summary judgment and show it was not deliberately indifferent as long as the plaintiff alleged an incident occurred. The law does not require Defendants to take perfect steps to entirely eliminate any risk of harm, only reasonable steps to counteract the risks of harm of which they have knowledge.

The fact that an assault occurred in a prison is not, in and of itself, an adequate reason to find Defendants' corrective actions were not reasonable and therefore Defendant Cothran acted with deliberate indifference towards Brown. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free of liability if they responded reasonably to the risk, ***even if the harm ultimately was***

*not averted*." (emphasis added)). [5]

The unrefuted testimony of Cothran and the above-referenced sections of the Roth Report clearly show Defendants were taking steps to combat perceived understaffing, monitor and control gang activity, and conduct contraband searches and remove contraband from Turbeville, and were not simply ignoring these issues. Although, as noted by the R&R, these steps did not absolutely prevent any incidents of violence from occurring at Turbeville, there is nothing in the record to support the R&R's conclusory finding that there is a genuine issue of fact, which implies, without any factual support, that these steps were unreasonable and equated to deliberate indifference on the part of Defendant Cothran, or that the mere fact Brown was injured means it is up to a jury to decide whether or not Defendant Cothran was deliberately indifferent.

The proper analysis on the prong of deliberate indifference required the R&R to first consider whether there was evidence in the record that a defendant took action instead of simply ignoring a substantial risk of harm. The R&R cites to such evidence, but the R&R utterly ignores that evidence and makes no meaningful analysis of the deliberate indifference prong.

In order to conduct a proper analysis, the R&R was required to consider whether there was evidence in the record to show either (1) a defendant actually did not take those steps or (2) specific evidence in the record that the steps taken by the defendant were unreasonable. However, there must be some evidence in the record other than the mere fact that the harm was

---

[5] *Farmer*'s holding that a defendant is not deliberately indifferent due solely to the fact that the harm was not ultimately averted remains the law today. *See, e.g.*, *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) ("Prison officials who had actual awareness of a substantial risk to the health or safety of an inmate incur no liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent."); *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (discussing the harm averted language from *Farmer* and analyzing whether a prison official's response was reasonable); *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (discussing the harm averted language from *Farmer*).

not averted to support a finding that the steps a defendant took were not reasonable. Contrary to the R&R's finding, the fact that a plaintiff was injured does not mean the steps a defendant took were not reasonable. If that is all it took, then there would be no need to have the deliberate indifference prong of the analysis.

As such, Defendants were entitled to summary judgment where the record clearly contains evidence they took actions to respond to the risk of harm and there was no other evidence to show they did not take these actions or the actions were not reasonable.

Accordingly, Defendants respectfully submit the R&R erred in not engaging in a proper analysis of whether Defendant Cothran was deliberately indifferent and ignoring the fact that the record shows Defendants took steps to counteract any staffing shortages and security-related issues, which was not refuted by Brown. Defendants request the Court review the Report and Recommendation and issue an order granting their Motion for Summary Judgment as to Brown's § 1983 claims for violation of the Eighth Amendment, including Brown's claims for failure to protect, supervisory liability, and failure to train.

> ### b. The R&R – like Plaintiff's expert James Aiken – fails to provide either reasoning or methodology of its conclusory opinion of conscious indifference

> #### 1. The R&R offers only a half-baked analysis of conscious indifference

The R&R recommends that this Court should **not** analyze whether Cothran's "response" was "inadequate", but rather simply determine "as a question of fact" Brown was injured by an inmate on inmate assault, and Cothran was on notice of prior inmate on inmate assaults, and therefore it is a question of fact whether his "response" was "inadequate". In application, the R&R's recommended half-baked analysis is nothing more than a *res ipsa loquitur* argument superimposed upon a § 1983 civil rights claim that literally creates a new "tort" liability under the ruse of an Eighth Amendment analysis. Whether the R&R criticizes under staffing,

contraband within SCDC, or any other aspect of the prison conditions at Turbeville Correctional, Brown – and the R&R - have failed to offer any factual evidence that Cothran's "response" to the alleged risk was inadequate.

> **2.      Neither Brown nor the R&R offer any reasonable factual response to the alleged danger**

The R&R fails completely to demonstrate what factual "response" to under staffing was reasonable, i.e. what specifically could Cothran have reasonably done to better protect Brown and the other inmates at Turbeville Correctional.  As if Cothran could simply remove or ship out violent and dangerous inmates, Brown would not have been injured by a fellow inmate.  As if Cothran could construct a prison NOT made of metal and steel or other solid objects, and thus no part of the facilities could be fashioned into a "shank" or weapon.  Basically, Brown's expert James Aiken completely and utterly fails to offer what HE WOULD DO as a reasonable warden to avoid the harm that befell Brown in this case.  In the absence of such specific factual evidence as to under staffing, contraband, STG activity, or any of the other conditions at Turbeville Correctional, his opinion of whether Cothran's response was inadequate is nothing more than sheer speculation and conclusory gobbledygook.

> **3.      Brown – and the R&R - offer no factual evidence that corrective action was reasonably available to Cothran**

Brown and the R&R fail completely to demonstrate what "response" to under staffing was reasonably available to Cothran.  As if Cothran could waive his magic staffing wand and additional employees would show up for work at Turbeville Correctional, the problem would be solved.  Is it reasonable to believe Cothran had such a magic staffing wand?  Does James Aiken or any other warden possess such an option to resolve under staffing in a correctional setting?

### 4. Brown and the R&R offer no factual evidence Brown would not have been injured but for Cothran's failure to take corrective action

Brown and the R&R fail completely to demonstrate a reasonable response to under staffing was reasonably available and that reasonably would have impacted causation of Brown's claimed injuries, i.e. Brown would have not been injured but for the warden's failure to so act.

Any analysis of a supervisor's response, in order to demonstrate inadequacy, must necessarily demonstrate the availability of adequate responses. Brown and the R&R completely fail to show any adequate responses here. Similarly, any analysis of a supervisor engaging in offensive practices must necessarily demonstrate non-offensive practices that were equally available (and reasonable) to the supervisor. Only after demonstrating adequate responses, and non-offensive practices, that were available to the supervisor (and reasonable under the circumstances), can any analysis begin to address deliberate indifference under the Eighth Amendment. The rule recommended by the R&R here imposes a constitutional question of liability on literally every person who undertakes *any* difficult task under the color of state law. Fail in any respect, and the R&R suggests it's always a jury question. Brown suggests state supervisors should be guarantors of good outcomes based upon the Constitution. *Farmer v Brennan* took great care to avoid the creation of a new tort under the guise of constitutional interpretation of the Eighth Amendment. The R&R would make Cothran's liability a 'thing which speaks for itself' merely because he held the title of warden.

The availability of options to "alleviate risk" he should have perceived but did not, is a necessary finding of fact before imposing § 1983 supervisory liability here. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v Brennan*, 511 U.S. 825, 838 (1994). Summary judgment should be granted here because Brown

completely fails to demonstrate the availability of reasonable options, reasonably available to Cothran, and that Brown would not have been injured but for Cothran's failure to choose those options to alleviate the known risk to Brown. *Farmer v Brennan* specifically rejected the creation of this new tort. As an example of a full conscious disregard analysis, see *Martinez v Field*, 2020 WL 2576178 * 7 - 11 (D. Idaho May 21, 2020).

> ### c. The R&R cherry picks Roth report "facts", but ignores significant uncontroverted facts supporting SCDC's corrective actions

Roth specifically states that SCDC's efforts to address under staffing "have been both expansive and creative." ECF 64-2, p. 2. SCDC staff "have aggressively identified hiring and staff retention as a priority for the department." Id. Roth notes that "[a]ll the traditional marketing methods have been used [by SCDC] as well as applying methods beyond the norm." Roth concedes "[t]he State of South Carolina and the Department of Corrections is not alone in [combating the under staffing] challenge." Id.

Roth found "[f]or the past several years the executive leadership team of the South Carolina Department of Corrections has explored most every option to effectively operate the institutions in a manner that is consistent with the mission of the agency." ECF 64-2, p. 7. Roth explains "It is not a question of ineffective policies, inappropriate use of available resources or an executive leadership team that is not committed [to increasing staffing levels]." Id.

The R&R completely ignores the fact that SCDC has explored both traditional and beyond the normal means to increase staffing levels. The R&R completely ignores Roth's conclusion that SCDC "has explored most every option to effectively operate the institutions in a manner consistent with the mission of the agency." Roth demonstrates SCDC, and thus Cothran, have consciously addressed the perceived dangers of which Brown complains, and therefore cannot be indifferent to them.

Roth specifically found SCDC "has established one of the better SRF [shift relief factor]

tracking and calculation systems [to improve staffing]."  ECF 64-2, p. 20.  Roth found SCDC's

"system has been in place for an extended period and is easy to use and managed by professional

personnel." Id.  Specifically as to Turbeville Correctional, Roth found "[t]he mission of the

facility is well diversified and as a result maintaining separation between the inmate

classifications and providing mandatory programing and services is essential to the operations of

the facility.  Facility management maximizes the use of the inmate housing unit designs that

allow for separation within each housing unit."  ECF 64-2, p. 232.

As to contraband at Turbeville, Roth determined:

> One of the keys to an effective contraband prevention and
> detection plan is to establish a realistic plan based on existing
> resources to prevent, identify and detect contraband as a facility-
> wide goal. Part of the plan should ensure fundamental practices
> including searches, patrol, detection and intelligence gathering are
> consistently incorporated into daily workload activities by all staff,
> not just those assigned to contraband control. Once an employee is
> held responsible for more than one post assignment at a time their
> ability to carry out all the necessary functions diminishes. **The
> department has recognized this concern and has been vigilant
> in their pursuit to confront this issue**.

ECF 64-2, p. 239 [**bold added**].  As to cell phone use at Turbeville, Roth found:

> The Director has been at the forefront on a national basis calling
> for federal support to repeal federal laws to allow cell phone
> jamming in correctional facilities. The Communications Act of
> 1934 and the Telecommunications Act of 1996 prohibit the
> operation of cell-phone-jamming equipment by any person,
> including state and local officials.

ECF 64-2, p. 239.  As to staffing at Turbeville, Roth found:

> The human resource component of operating a prison is one of the
> most critical elements in maintaining an efficient and cost-effective
> operation. Having a strategic staffing plan that takes into
> consideration the mission of the facility, legal standards and
> physical plant design is essential. At TCI the effectiveness of the

staffing plan has been hindered primarily by staffing levels that cannot effectively meet existing workload responsibilities.

**As a result, administrative personnel have reduced workload levels (closed a housing unit) reduced inmate out-of-cell time, filled front-line post assignments through the augmentation of supervisory personnel and expanded existing staff responsibilities**.

ECF 64-2, p. 244-245 [**bold added**].

### d. *Brown and the R&R fail to meet burden to show Cothran deliberately indifferent*

In response to a timely motion for summary judgment, Brown carries the burden to demonstrate that Cothran had reasonable options to address any factors that presented an unconstitutional risk to Brown, that these options were reasonably available to Cothran, that he consciously failed to exercise these options, and that Brown would not have been injured but for Cothran's failure to implement these reasonable and reasonably available options. Brown must demonstrate Cothran's response to "that knowledge [of Brown's risk] was so inadequate [because other reasonable adequate remedies were available so] as to show deliberate indifference to or tacit authorization of the alleged offensive practices [where reasonable non-offensive practices were reasonably available to Cothran]; and (3) that there was an affirmative causal link between [Cothran's] inaction and the particular constitutional [risk of injury by fellow inmates] suffered by [Brown]. Brown - and the R&R - has failed to do so here and summary judgment should be granted.

## II.     The R&R erred in finding Defendant Cothran was not entitled to qualified immunity

### a.     No reasonable supervisor would have known his conduct violated Brown's clearly established rights

The R&R found Defendant Cothran was not entitled to qualified immunity, noting "[i]t has long been established that prison officials have a duty to protect inmates from a substantial and known risk of harm, including harm inflicted by other prisoners." ECF Entry No. 62 at 43. Although it is true that a prison official's duty to protect inmates from a substantial risk of harm is clearly established, Defendant Cothran is entitled to qualified immunity because he would not have known, by looking at the established case law at the time, that his actions violated Brown's clearly established constitutional rights.

In determining whether an individual defendant is entitled to qualified immunity, this Court engages in a two-step process as set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). The Court must first determine "whether a constitutional right would have been violated on the facts alleged." 533 U.S. at 200.  "Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003).

Defendants submit the R&R did not appropriately address the second prong of the qualified immunity analysis—whether it would have been clear to an objectively reasonable prison official that his actions violated Brown's constitutional rights.  As it relates to the second prong, the R&R found she could not determine whether the actions were objectively reasonable because "[q]uestions of fact exist with regards to whether Cothran violated Brown's clearly established rights."  ECF Entry No. 62 at 43-44.

As discussed above, the R&R's analysis, or lack thereof, on the deliberate indifference prong, effectively changed the law and rendered the deliberate indifference prong meaningless. Instead of determining whether there was evidence in the record to show Defendants did not take the steps they argued they took or evidence to show the steps they took were unreasonable, the R&R ruled that the steps Defendants took must have been unreasonable because Brown's was allegedly injured in the November 14, 2017 incident. However, the clearly established law at the time of the incident showed the fact that the harm was not averted was not enough, in and of itself, to show that a prison official acted with deliberate indifference. *See Farmer*, 511 U.S. at 844.

An objectively reasonable prison official looking at the clearly established law at the time of the incident would believe he was free of liability in the instant case because he took steps to combat the risk of harm caused by understaffing and security-related issues, such as trying to counteract staffing shortages and conduct contraband sweeps. *See id.* As discussed above, the analysis of the R&R applied as to the deliberate indifference prong, effectively changed the established case law by finding an incident is enough to show the actions taken by prison officials were not reasonable. Accordingly, the question of whether Defendants would have been on notice at the time of this incident that their actions violated Brown's rights must be answered in the negative as the clearly established case law at the time indicated their actions taken in response to a risk of harm would not constitute deliberate indifference unless there was some evidence, other than the occurrence of the alleged injury, to show the actions were unreasonable.

As such, the R&R erred in finding Defendant Cothran was not entitled to qualified immunity because an objectively reasonable prison official would not have believed Defendant Cothran's actions violated Brown's clearly established rights.

### b. The R&R's *res ipsa loquitur* theory of § 1983 supervisory liability is novel, and thus Cothran is entitled to qualified immunity

Because Cothran could not have envisioned the R&R's half baked *res ipsa loquitur* version of § 1983 liability based solely on the fact that inmate on inmate violence had previously occurred at Turbeville Correctional, and therefore it is a jury question as to whether Cothran was consciously indifferent to Brown's risk of harm merely because he was aware of prior inmate violence, qualified immunity is appropriate here. Cothran could not have envisioned that § 1983 liability would be imposed upon him under circumstances as these where NO ONE has suggested what he could have done differently to protect Brown. Qualified immunity is appropriate here. In this case, Roth establishes that SCDC, and thus Cothran, has attempted to address staffing, contraband and inmate violence at Turbeville Correctional by "explor[ing] most every option to effectively operate the institutions in a manner that is consistent with the mission of the agency." ECF 38-7, p. 7. In the face of such uncontroverted evidence from Roth, Cothran could not have envisioned that he was violating the constitutional rights of Brown and therefore he is entitled to qualified immunity.

As such, the R&R erred in finding Cothran was not entitled to qualified immunity because an objectively reasonable prison official would not have believed Cothran's actions violated Brown's clearly established rights.

**III.    The R&R erroneously relied upon James Aiken's report which is nothing more than *ipse dixit*, or "opinions justified solely by the fact that a qualified expert holds them" and should be disregarded**

The R&R correctly cites "*United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) holding that ('opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.')," the R&R immediately and without reasoning, analysis, or methodology thereafter swallows the conclusory statements of expert James Aiken.[6]  The R&R aptly notes that conclusory statements cannot support the denial of summary judgment – the rule, and then immediately breaks the rule.  For example, the R&R erroneously determined "the evidence here demonstrates Turbeville had consistently high numbers of contraband related incidents and incidents of inmate-on-inmate assaults for roughly three years prior to the incident at issue, with no significant improvement."  ECF 35, p. 42.

The R&R fails to recognize that the district court has a gatekeeper function under Evidence Rules 104(a) and 702.  This duty exists not only at the time of trial, but at the summary judgment stage as well.

> **a.    *Aiken fails to provide either reasoning or methodology***

James Aiken emphatically states defendants are consciously indifferent.[7]  Under Rule 104(a) and 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,

---

[6] The R&R states "While Defendants are correct that an expert's legal conclusions are generally inadmissible, the portion of Mr. Aiken's expert opinion testimony cited here does not constitute a legal conclusion. (Dkt. No. 28-1 at 11);" ECF 35, p. 38, note 11.

[7] Aiken's ukase statement is reminiscent of the well-known childhood tale:
"When I use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."
"The question is," said Alice, "whether you can make words mean so many different things."
"The question is," said Humpty Dumpty, "which is to be master—that's all."
Lewis Carroll, Through the Looking–Glass and What Alice Found There 123 (The MacMillan Co. 1899) (1862); cited in *Rector v Approved Fed. Sav. Bank*, 265 F.3d 248, note 2 (4th Ct.App. 2001).  Like Humpty Dumpty, Aiken fails to reveal how he factually defines consciously indifferent.

589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Thus, the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," that (2) "the expert has reliably applied the principles and methods to the facts of the case," and (3) that the "testimony is based on sufficient facts or data." Fed.R.Evid. 702(b), (c), (d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786, and whether the expert has "faithfully appl[ied] the methodology to facts." *Roche v. Lincoln Prop. Co.*, 175 Fed.Appx. 597, 602 (4th Cir.2006); cited in *In re Lipitor,* 150 F.Supp.3d 644, 646 (D.S.C. July 15, 2015)

Factors to be considered include "whether a theory or technique ... can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether the theory or technique has garnered "general acceptance." Daubert, 509 U.S. at 593–94, 113 S.Ct. 2786; accord *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir.2014). However, these factors are neither definitive nor exhaustive, *United States v. Fultz*, 591 Fed.Appx. 226, 227 (4th Cir.2015), cert. denied, ─── U.S. ────, 135 S.Ct. 2370, 192 L.Ed.2d 159 (2015), and "merely illustrate[ ] the types of factors that will bear *647 on the inquiry." *Hassan*, 742 F.3d at 130.  Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying," *Wehling v. Sandoz Pharm. Corp*., 162 F.3d 1158 (4th Cir.1998), or through "research they have conducted independent of the litigation," *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995) (on remand), and whether experts have "failed to meaningfully account for ... literature at odds with their testimony." *McEwen v. Baltimore Washington Med. Ctr. Inc*., 404 Fed.Appx. 789, 791–92 (4th Cir.2010).

Rule 702 also requires courts "to verify that expert testimony is 'based on sufficient facts or data.' " *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir.2015) (quoting Fed.R.Evid. 702(b)). Thus, "trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." *Id.* The court may exclude an opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Id.* "The proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir.2001).

A district court should be mindful that the *Daubert* inquiry involves "two guiding, and sometimes competing, principles." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.1999). "On the one hand, ... Rule 702 was intended to liberalize the introduction of relevant expert evidence," id. and "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. Stanley*, 533 Fed.Appx. 325, 327 (4th Cir.2013) cert. denied, —— U.S. ——, 134 S.Ct. 1002, 187 L.Ed.2d 852 (2014). On the other, "[b]ecause expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinion." *United States v. Fultz*, 591 Fed.Appx. 226, 227 (4th Cir.) cert. denied, —— U.S. ——, 135 S.Ct. 2370, 192 L.Ed.2d 159 (2015); accord *Westberry*, 178 F.3d at 261; *In re Lipitor*, 150 F.Supp.3d at 646-647.

In *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422, 23 Fed. R. Evid. Serv. 1222 (5th Cir. 1987), the district court observed:

> Although Rule 703 expanded the acceptable bases of expert
> opinion at common law…this expansion does not extend "to make
> summary judgment impossible whenever a party has produced an
> expert to support its position."…. The court may still inquire into
> the reliability and foundation of any expert opinion to determine
> admissibility.

As the court stated in *Slaughter v. Southern Talc Co.*, "[w]ithout more than credentials and a

subjective opinion, an expert's opinion that 'it is so' is not admissible." *Slaughter v. Southern*

*Talc Co.*, 919 F.2d 304, 31 Fed. R. Evid. Serv. 1509, 20 Fed. R. Serv. 3d 1462 (5th Cir. 1990).

*See also Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, Prod. Liab. Rep. (CCH) P 13686 (1st Cir.

1993) ("[w]here an expert presents nothing but conclusions … such testimony will be

insufficient to defeat a motion for summary judgment"; court found that each of plaintiff's expert

affidavits failed to contain sufficient support for its conclusion that the injury was caused by

defendant's product) (quotation and citation omitted); *U.S. v. Various Slot Machines on Guam*,

658 F.2d 697, 700, 9 Fed. R. Evid. Serv. 197 (9th Cir. 1981) ("in the context of a motion for

summary judgment, an expert must back up his opinion with specific facts"). At the very least,

the affidavit should show that the expert is familiar with the relevant facts of the case. See *Monks*

*v. General Elec. Co.*, 919 F.2d 1189, 1192, 31 Fed. R. Evid. Serv. 932, 19 Fed. R. Serv. 3d 1519

(6th Cir. 1990) (noting that case relied on by magistrate merely stood for the proposition that

"affidavits by experts who have not familiarized themselves with the record are insufficient to

withstand a summary judgment motion."). It should also set forth the reasoning utilized by the

expert, at least in general terms. See *Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago*,

877 F.2d 1333, 1339, R.I.C.O. Bus. Disp. Guide (CCH) P 7247, 1989-1 Trade Cas. (CCH) ¶

68626, 13 Fed. R. Serv. 3d 1407 (7th Cir. 1989) (Rule 56(e) requires that an expert affidavit set

forth "a process of reasoning beginning from a firm foundation").

In *Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333, 1338,

1339, 13 Fed. R. Serv. 3d 1407 (7th Cir. 1989).

> Rule 705 of the Federal Rules of Evidence allows experts to
> present naked opinions. Admissibility does not imply utility.
> Professor Bryan presented nothing but conclusions—no facts, no
> hint of an inferential process, no discussion of hypotheses
> considered and rejected. Rule 56(e) of the Rules of Civil Procedure
> provides that affidavits supporting and opposing motions for
> summary judgment must do more than present something that will
> be admissible in evidence. They shall "set forth facts" and by
> implication in the case of experts (who are not "fact witnesses") a
> process of reasoning beginning from a firm foundation. *American
> Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1579–80 (11th
> Cir.1985). "It will not do to say that it must all be left to the skill of
> experts. Expertise is a rational process and a rational process
> implies expressed reasons for judgment." *FPC v. Hope Natural
> Gas Co.*, 320 U.S. 591, 627, 64 S.Ct. 281, 299, 88 L.Ed. 333
> (1944) (Frankfurter, J., dissenting). An "opinion has a significance
> proportioned to the sources that sustain it." *Petrogradsky
> Mejdunarodny Kommerchesky Bank v. National City Bank*, 253
> N.Y. 23, 25, 170 N.E. 479, 483 (1930) (Cardozo, J.). An expert
> who supplies nothing but a bottom line supplies nothing of value to
> the judicial process. See *Richardson v. Richardson–Merrell, Inc.*,
> 857 F.2d 823, 829–32 (D.C.Cir.1988), holding that an expert's
> declaration, full of assertion but empty of facts and reasons, won't
> get a case past a motion for summary judgment, for the judge must
> "look behind [the expert's] ultimate conclusion ... and analyze the
> adequacy of its foundation." *Id.* at 829. See also *Washington v.
> Armstrong World Industries, Inc.*, 839 F.2d 1121 (5th Cir.1988);
> *Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir.1987).
> Professor Bryan would not accept from his students or those who
> submit papers to his journal an essay containing neither facts nor
> reasons; why should a court rely on the sort of exposition the
> scholar would not tolerate in his professional life?

877 F.2d at 1339.  The *Mid-State Fertilizer* court continued:

> [The expert] offered the court his CV rather than his economic
> skills. Judges should not be buffaloed by unreasoned expert
> opinions. Paul Meier, *Damned Liars and Expert Witnesses*, 81
> J.Am.Statistical Ass'n 269 (1986). [Trial] Judge Hart was not. We
> have gone into detail not because essential to sustain his decision
> but because **ukase in the guise of expertise is a plague in
> contemporary litigation**. "The importance of safeguarding the

> integrity of the [judicial] process requires the trial [or appellate]
> judge, when he believes that an expert's testimony has fallen below
> professional standards, to say so, as many judges have done."
> *Deltak, Inc. v. Advanced Systems, Inc.*, 574 F.Supp. 400, 406
> (N.D.Ill.1983), vacated on other grounds, 767 F.2d 357 (7th
> Cir.1985). See also Learned Hand, *Historical and Practical
> Considerations Regarding Expert Testimony*, 15 Harv.L.Rev. 40
> (1901). [Expert] Professor Bryan cast aside his scholar's mantle
> and became a shill for Mid–State; Judge Hart, by observing that
> the emperor has no clothes, protected the interests of the judicial
> system.

877 F.2d at 1340 (**bold added**).

Aiken's conclusory opinions are nothing more than improper *ipse dixit*,[8] or "opinions justified solely by the fact that a qualified expert holds them."  "Presenting a summary of a proffered expert's testimony in the form of a conclusory statement devoid of factual or analytical support is insufficient to lay the proper foundation for the admission of that testimony." *SunTrust Banks, Inc. v. M.G. Robertson*, No. 2:09CV197, 2010 WL 11566593, at *3 (E.D. Va. Aug. 12, 2010) (citation omitted).

"Moreover, his reports contain conclusory statements without adequate explanation or support, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

The advisory committee notes to Federal Rule of Evidence 702 offer some insight into this issue, explaining that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed.R.Evid. 702 advisory committee notes. Indeed, as

---

[8] *ipse dixit* is "a dogmatic and unproven statement."

the Supreme Court has observed, "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). When an expert relies "solely or primarily on experience," however, the court cannot simply "tak[e] the expert's word for it." Fed.R.Evid. 702 advisory committee notes. Rather, the *Daubert* inquiry becomes whether the expert can "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id.; see also *Kumho Tire Co.*, 526 U.S. at 151 ("[I]t will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable."). Thus, … the court cannot deem an opinion reliable on the grounds that the expert has experience, unless the expert has established a link between his observations and his conclusions. *Hovey v Cook, Inc*., 2015 WL 1405565 (S.D. WV, March 26, 2015).

"The Fourth Circuit has acknowledged that, although experiential expert testimony does not rely on anything like a scientific method, such testimony is admissible under Rule 702 so long as an experiential witness explains how his experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts ." *The Harvester, Inc. v. Rule Joy Trammell Rubio*, LLC, No. 3:09–CV–358, 2010 WL 2653373, at *2 (E.D.Va. July 2, 2010) (internal quotation marks and alternations omitted) (quoting from *United States v. Bynum*, 604 F.3d 161, 167 (4th Cir.2010)). But simply noting his history of past observations is insufficient to explain how McGinley arrived at his conclusion here. McGinley simply states he would expect the ductwork to have been deformed due to over pressurization. This conclusory statement is readily distinguishable from reliable experiential

expert witness testimony. Cf. *Bynum*, 604 F.3d at 167–68 (affirming the admission of expert testimony as to the authenticity of images of child pornography where the expert "testified as to exactly the steps he takes in determining the authenticity of images under the approved FBI 'checklist,' including ascertaining an image's resolution and focus, examining its sharpness and depth, comparing it to images in the FBI database, and identifying in the image certain human characteristics—like skin, teeth, ears, and hair—that are difficult to recreate by computer").

"[I]t is not the Court's burden to sift through the record and cobble together support for [plaintiff expert's] opinions. *Estate of Tessier*, 402 F.3d at 1113 ("Again, we stress that it was [the proponent of the expert's] burden—not that of the trial court—to lay the foundation for admission of [the expert's] testimony."); see also *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotation marks omitted). Rather, Plaintiff alone shoulders the "substantial burden" to lay the proper foundation for the admission of [plaintiff's expert] opinions." *Jones v Anderson*, 2018 WL 2717221 * 10 (S.D.Ga., June 6, 2016)"Mr. Berg's Expert Report exemplifies the principle that a witness may be a well-qualified expert but still not provide reliable expert testimony. ... [detainee] Plaintiff has failed to meet his burden to lay the foundation for the admission of the overwhelming majority of Mr. Berg's opinions." * 1).

"[Plaintiffs expert's] declaration regarding the alleged inadequacy of the Sheriff's training and monitoring program and the consequences of those deficiencies are conclusory, and neither Plaintiff nor [his expert] identifies a single document out of the 2,300 pages of documents reviewed by Kenney or the 397 pages included in Plaintiff's appendix to support [the expert's]

conclusory statements. In addition, the County contends that "Longoria relies solely on her expert to establish 'deliberate indifference,' which she may not do.  [citation omitted] The County is correct." (citing *Conner v. Travis*, 209 F.3d 794, 798 (5th Cir. 2000)); and *Snyder*, 142 F.3d at 799." *Longoria v County of Dallas, Texas*, 2017 WL 958605 * 15 (N.D. Tx., March 13, 2017) citing *Roberts v. City of Shreveport*, 397 F.3d 287, 294 (2005) (concluding that the plaintiffs' evidence of pattern, which was based on an "excessive high level of generality" and consisted of only "a handful of tangentially related incidents" was insufficient to demonstrate a pattern of unconstitutional conduct).

In *Parks v Blanchette*, 144 F.Supp.3d 282, 320-321 (D.Conn. 2015), the court observed:

> ("His [expert's] conclusory testimony fails to create a genuine question of material fact sufficient to defeat a summary *321 judgment motion and is the type of conclusion that *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), renders inadmissible. See *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 187, 193 (2d Cir.1987) ("mere speculation or idiosyncratic opinion, even if that opinion is held by one who qualifies as an expert" cannot establish a genuine issue of material fact on summary judgment); *Kelsey v. City of N.Y.*, No. 03 CV 5978(JFB)(KAM), 2007 WL 1352550, at *5 (E.D.N.Y. May 7, 2007) ("Conclusory affidavits, even from expert witnesses, do not provide a basis upon which to grant or deny motions for summary judgment.") (internal quotation marks and citation omitted); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311–12 (2d Cir.2008) (affirming a district court's finding that an expert who conclusorily disagreed with another failed to create a genuine question of material fact sufficient to defeat a summary judgment motion); see also *Simmons v. United States*, 88 Fed.Appx. 435, 437–38 (2d Cir.2004) (expert's conclusory statement that physician's actions fell below the standard of care was "rightly regarded by the district court as insufficient to raise a genuine issue of material fact").

See *Wooley v. Smith & Nephew Richards, Inc.*, 67 F.Supp.2d 703, 711 (S.D.Tex.1999) ("An expert's mere incantation of legally sufficient words or phrases does not make an expert's opinion admissible.").  See *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir.1995) (expert

testimony on reasonableness of police behavior in light of Fourth Amendment standards is statement of legal conclusions and not admissible). Any expert report that is devoid of any standards and explanations that would assist the trier of fact, should be excluded. See *United States v. Ellsworth*, 738 F.2d 333, 336 (8th Cir.1984) (expert's "conclusory statement" properly excluded for lack of foundation).

## IV. Brown's Injunctive Relief claims must be dismissed as Brown has been released from SCDC

In addition to his claims for money damages, Brown asks this Court to issue an Order of declaratory and/or injunctive relief. Although he does not specify what exactly he is asking this Court to declare, nor what he is seeking to have the Defendants enjoined from doing, Defendants assert his claim for declaratory and/or injunctive relief is moot.

Brown has been released from SCDC custody. *See* Depo. Brown 6:2-5 (ECF Entry No. 54-2). As the Fourth Circuit has previously held, "[b]ecause the prisoner has been transferred, his request for injunctive relief is moot." *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (citing *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347 (1975)). Defendants assert this Court should find the same in this matter.

Additionally, Defendant Cothran has retired from SCDC, and therefore is no longer a Warden at Turbeville Correctional, or any other correctional facility. Even if Brown's release did not moot his injunctive and/or declaratory relief claims, Defendants assert Defendant Cothran's retirement from service as a correctional officer would moot such claims against him.

Furthermore, the type of relief sought by Brown is disfavored, as "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state

penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities." *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972).

Wherefore, Defendants assert the District Court should conduct a *de novo* review of Brown's claims for declaratory and/or injunctive relief, and then grant Defendants' summary judgment for such claims.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit the preceding objections to the April 23, 2020 Report and Recommendation granting and denying in part Defendants' Motion for Summary Judgment and request the District Court review and reconsider the Report and Recommendation pursuant to 28 U.S.C.A. § 636(b)(1)(A) and Rule 72(a).

SMITH │ ROBINSON

Respectfully submitted,


s/David C. Holler
David C. Holler
Federal Court ID: 5608
126 North Main Street
Post Office Box 580
Sumter, SC 29151
(803)778-2471
davidholler@smithrobinsonlaw.com
**ATTORNEY FOR DEFENDANTS**

June 19, 2020