**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| BRANDON D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cv-1022-DCN-MGB |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| CORRECTIONS, and RICHARD | ) | |
| COTHRAN, Warden, Turbeville | ) | |
| Correctional Institution | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 62, that the court deny defendants South Carolina Department of Corrections ("SCDC") and Richard Cothran's ("Cothran") (collectively, "defendants") first motion for summary judgment, ECF No. 54, and grant in part and deny in part defendants' second motion for summary judgment, ECF No. 55. For the reasons set forth below, the court adopts in part and rejects in part the R&R, denies defendants' first motion for summary judgment, and grants in part and denies in part defendants' second motion for summary judgment.

## I.  BACKGROUND

### A. Factual Background

The R&R ably recites the facts of this case and includes a thorough review of the evidence consequential to the Magistrate Judge's findings and recommendations. Because neither party objects to the R&R's presentation of the facts or relevant evidence,

1

the court provides only a broad-strokes summary of those facts material to its legal analysis in lieu of a more comprehensive recitation.

Plaintiff Brandon D. Brown ("Brown") was an inmate at Turbeville Correctional Institution ("Turbeville") during the time period relevant to this action. Brown alleges that on November 14, 2017, he was lying on his cell bunk when he was attacked by his cellmate, a man who "weighed about 360 pounds." ECF No. 1-1, Compl. ¶ 22. According to the complaint, Brown's cellmate stepped on Brown's head, beat Brown with his fists, bit Brown in the face and hands, and repeatedly hit Brown with a "lock-in-a-sock", a makeshift weapon made from locks allegedly available for purchase in Turbeville's canteen. Brown alleges that the beating "continued for at least what seemed like 45 minutes," and that throughout the duration of the attack, Brown and other inmates on his wing hollered for correctional offers to come help. Id. at ¶ 26. Eventually, an inmate who was a "dorm worker" heard the attack from the hallway and ran to alert the correctional officer on duty, who went to the scene of the attack, entered Brown's cell, and restrained Brown's cellmate, ending the attack. Id. at ¶ 27. According to Brown, the attack persisted for forty-five minutes without officer intervention because "[t]he correctional officer on duty was not on the wing during the attack[.]" Id. at ¶ 28. Immediately following the attack, Brown, allegedly unconscious, was taken to a hospital where he was treated before being released back to Turbeville.

**B. Procedural History**

This lawsuit was initially filed as a multi-plaintiff action on March 19, 2018 in the Clarendon County Court of Common Pleas by a number of Turbeville inmates in the custody of SCDC. Each of the plaintiff's claims shared common allegations of

2

widespread violence and understaffing at Turbeville. Defendants removed the multi-plaintiff action to this court on April 13, 2018. ECF No. 1. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02 (D.S.C.), the court assigned the matter to Magistrate Judge Baker, who severed the plaintiffs' claims into several plaintiff-specific actions on August 9, 2019. ECF No. 43. The instant action is one of those severed matters. In his complaint, Brown brings four causes of action. Brown's first claim requests "temporary and permanent injunctive relief" against both defendants pursuant to South Carolina state law and 18 U.S.C. § 1983. Compl. ¶¶ 89–92. Brown's second and third claims allege violations of his civil rights pursuant to § 1983 against Cothran. With respect to his second claim, Brown alleges that Cothran violated his rights by, inter alia, "allowing uncontrolled violence" in Turbeville, "failing to provide protection and security" for Brown, and "allowing inmate[s] to have dangerous weapons." Id. at ¶ 94. With respect to his third claim, Brown alleges that Cothran, inter alia, failed to implement appropriate procedures and customs at Turbeville and failed to "adequately train and supervise his employees." Id. at ¶¶ 98–99. Finally, Brown's fourth cause of action asserts a tort claim against SCDC pursuant to the South Carolina Tort Claims Act ("SCTCA") for negligence and gross negligence. Id. at ¶¶ 102–104.[1]

On October 21, 2019, defendants filed two motions for summary judgment. ECF Nos. 54 and 55. Brown responded to both motions, ECF Nos. 56 and 57, and defendants

---

[1] The complaint is far from a model of clarity, and it fails to clearly distinguish against which defendant its claims are directed. The R&R interpreted Brown's claims as the court states them here. Because neither party objects the R&R's interpretation of the complaint, the court adopts the R&R's interpretation and finds that Brown's first claim is alleged against both defendants, that his second and third claims are alleged against Cothran, and that his fourth claim is alleged against SCDC.

did not reply.  On April 23, 2020, Magistrate Judge Baker issued the R&R, which recommends that the court deny defendants' first motion for summary judgment and grant in part and deny in part defendants' second motion for summary judgment.  ECF No. 62.  On June 19, 2020, defendants filed objections to the R&R.  ECF No. 70.  Brown failed to respond to defendants' objections or lodge any objections of his own, and the time to do each has now expired.  As such, this matter is now ripe for the court's review.

## II.  STANDARD

### A.  R&R

The Magistrate Judge only makes a recommendation to the court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court.  Id. at 270-71.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

4

conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

### B. Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'

" Id. (quoting Fed. R. Civ. P. 56(e)).  The plain language of Federal Rule of Civil

Procedure 56(c) "mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  "[C]onclusory allegations or denials, without more, are insufficient to preclude

the granting of the summary judgment motion."  Major, 2012 WL 2000680, at *1.

### III.  DISCUSSION

**A. The R&R**

Before delving into the disputed issues, the court briefly summarizes the findings

of the R&R to which the parties did not object.  As indicated above, the R&R considered

two motions for summary judgment, both filed by defendants.  In the first, defendants

argue that they are entitled to summary judgment because Brown failed to exhaust his

administrative remedies, a mandatory condition precedent to filing suit under the

Prisoner's Litigation Reform Act, 42 U.S.C. § 1997e(a).  ECF No. 54.  In the alternative,

defendants' first motion requests that the court hold an evidentiary hearing to determine

whether Brown exhausted his administrative remedies.  Defendants' second summary

judgment motion asserts a number of other grounds for relief—that defendants are

entitled to Eleventh Amendment immunity, that Cothran is entitled to qualified

immunity, that Brown's constitutional claims fail as a matter of law, and that Brown's

tort claims fail as a matter of law.  ECF No. 55.

With respect to defendants' first summary judgment motion, the R&R found that

Brown's claims were not barred by the Prisoner's Litigation Reform Act because

although Brown failed to exhaust certain administrative remedies, his failure to do so is excused because "administrative remedies were effectively unavailable" to Brown. ECF No. 62 at 15 (citing Wilson v. Eagleton, 2018 WL 4908277, at *3 (D.S.C. Oct. 10, 2018)). Further, the R&R determined that an evidentiary hearing was not necessary to resolve the exhaustion issue. Id. at 16. Accordingly, the R&R recommends that the court deny defendants' first motion for summary judgment without holding an evidentiary hearing. Defendants failed to object to the R&R's proposed resolution of their first motion for summary judgment. The court has reviewed that portion of the R&R for clear error and finds none. As such, the court adopts the R&R with respect to defendants' first motion for summary judgment and denies the motion. See Diamond, 416 F.3d at 315 ("[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

With respect to defendants' second motion for summary judgment, the R&R made several findings to which the parties do not object. First, the R&R found that "the Eleventh Amendment bars [Brown]'s § 1983 claim for injunctive relief against SCDC and bars [Brown]'s § 1983 claims for monetary damages [ ] against [ ] Cothran in his official capacity." ECF No. 62 at 20–21. Further, the R&R found that Eleventh Amendment immunity does not extend to SCDC with respect to Brown's tort claims because "SDCD voluntarily removed this case to federal court" and thus "consented to suit" for those claims. Id. at 21. Neither Brown nor defendants object to the R&R's findings or consequent recommendations on Eleventh Amendment immunity. Finding no clear error in these findings, the court adopts them. As such, the court grants in part and

denies in part defendants' second summary judgment motion with respect to defendants' defense of Eleventh Amendment immunity. Specifically, the court grants summary judgment in favor of the defendants on Brown's claim for injunctive relief under § 1983 against SCDC and on Brown's § 1983 claims for monetary damages against Cothran to the extent those claims are alleged against Cothran in his official capacity. Additionally, the R&R found that Brown's tort claim against SCDC depended on genuine issues of material fact, making summary judgment unavailable. This finding also failed to elicit objection and contains no clear error. As such, the court denies summary judgment on Brown's tort claims against SCDC. The R&R's remaining recommendations garnered specific objections and thus require de novo review, which the court conducts below.

To recap, after the court adopts the R&R's unopposed findings, Brown's remaining claims are: (1) a claim for injunctive relief against Cothran in his official capacity under § 1983 and against SCDC under South Carolina state law, (2) a § 1983 claim against Cothran in his individual capacity based on Cothran's failure to protect Brown, (3) a § 1983 claim against Cothran in his individual capacity for failing to adequately train and supervise his employees, and (4) a claim against SCDC for negligence and gross negligence under the SCTCA. The court now turns to the findings of the R&R to which defendants did specifically object.

**B. Objections**

Defendants have lodged four objections to the R&R. Defendants' first, second, and third objections concern Brown's § 1983 claims against Cothran in his individual capacity, arguing that the R&R failed to properly analyze the issue of deliberate indifference, failed to consider certain dispositive evidence, and wrongly relied on other,

improper evidence. Defendants' fourth objection relates to Brown's claim for injunctive

relief against Cothran. Although defendants failed to address the claim in their summary

judgment motion, they now argue that Brown's claim for injunctive relief must fail as a

matter of law. The court addresses each objection in turn.

### 1. Deliberate Indifference

The R&R found that the viability of Brown's first § 1983 claim depends on

whether Brown can show that Cothran violated his rights under the Eighth Amendment,[2]

which in this case requires a showing that Cothran had knowledge of a substantial risk to

Brown's safety, and that Cothran was deliberately indifferent to that risk. The R&R

concluded that both prongs depend on genuine issues of material fact, making summary

judgment inappropriate. Defendants object, arguing that the evidence shows that Cothran

was not deliberately indifferent as a matter of law. The court agrees with the R&R,

overrules defendants' objection, and adopts the R&R in this respect.

A civil action under § 1983 allows "a party who has been deprived of a federal

right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at

Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must

allege two essential elements: (1) that a right secured by the Constitution or laws of the

United States was violated, and (2) that the alleged violation was committed by a person

---

[2] Brown's complaint alleges violations of his rights under the Eighth and
Fourteenth Amendments. As a preliminary finding, the R&R noted that "because
[Brown] is a state prisoner and not a pre-trial detainee, his allegations [ ] implicate the
Eighth Amendment's proscription against cruel and unusual punishment, not the
Fourteenth Amendment's requirement of due process." ECF No. 60 at 20. Brown did
not object to this finding, and the court agrees with the R&R. As such, the court
dismisses Brown's § 1983 claims to the extent that they allege violations of his
Fourteenth Amendment rights. As discussed below, Brown's § 1983 claims remain
viable under the Eighth Amendment.

acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  There is no

dispute that Cothran, in his individual capacity, is a proper § 1983 defendant because he

was acting under the color of state law in his position as warden of Turbeville.  Instead,

the question before the court is whether Cothran violated Brown's constitutional rights.

In this case, Brown's allegations against Cothran implicate the Eighth Amendment.  See

Helling v. McKinney, 509 U.S. 25, 31 (1993) ("The treatment a prisoner receives in

prison and the conditions under which he is confined are subject to scrutiny under the

Eighth Amendment.").

The Eighth Amendment guarantees the right of the people to be free from the

infliction of "cruel and unusual punishments[.]"  U.S. Const. Amend. VIII.  The Eighth

Amendment's promise imposes upon prison officials the duty to "provide humane

conditions of confinement" to the incarcerated.  Farmer v. Brennan, 511 U.S. 825, 832

(1994).  While this duty "does not mandate comfortable prisons," Rhodes v. Chapman,

452 U.S. 337, 349 (1981), it does require officials to "take reasonable measures to

guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526–527 (1984),

which includes a responsibility "to protect prisoners from violence at the hands of other

prisoners," Farmer, 511 U.S. at 833.  Recognizing that prisons "are places of involuntary

confinement of persons who have a demonstrated proclivity for antisocial criminal, and

often violent, conduct," Hudson 468 U.S. at 526, the Supreme Court has noted that the

Eighth Amendment does not impose upon prison officials a duty to ensure complete

safety, but it does mandate that officials "are not free to let the state of nature take its

course," Farmer, 511 U.S. at 832, 844.

An Eighth Amendment failure-to-protect claim requires that a prisoner make two showings. First, the prisoner must show "a serious deprivation of his rights, " Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014), meaning that the "prison official's act or omission [ ] result[s] in the denial of the minimal civilized measure of life's necessities," Farmer, 511 U.S. at 834. A prisoner can make such a showing "in the form of a serious or significant physical or emotional injury." Danser, 772 F.3d at 346 (internal quotation marks and citations omitted). In this case, defendants do not dispute that Brown's injuries establish a "sufficiently serious" deprivation of his rights, such that he satisfies the first element of his failure-to-protect claim under the Eighth Amendment. Farmer, 511 U.S. at 834.

The second element, central to defendants' objections, requires a prisoner to show that the prison official has a "sufficiently culpable state of mind," meaning that the official acted intentionally or with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)) (internal quotation marks omitted). The Supreme Court has determined that "deliberate indifference l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other," and is most fairly categorized as "recklessly disregarding [a known] risk." Id. at 836. Determining whether a prison official was deliberately indifferent involves a two-pronged, subjective inquiry. A prison official acts with deliberate indifference where (1) "he knows that inmates face a substantial risk of serious harm," and (2) he "disregards that risk by failing to take reasonable measures to abate it." Id. at 847. A plaintiff must show that the prison official had actual knowledge with respect to both prongs.

11

Given the difficulty in obtaining direct evidence of deliberate indifference, the law is clear that "[w]hether a prison official acted with 'deliberate indifference' . . . can be proven through direct or circumstantial evidence." Cox v. Quinn, 828 F.3d 227, 236 (4th Cir. 2016). Both prongs of the deliberate indifference inquiry are questions of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Farmer, 511 U.S. at 842). Thus, with respect to the first prong, "a factfinder may conclude that [an officer] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. And similarly, with respect to the second prong, "a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances." Parrish, 372 F.3d at 303. The "heavy" burden of showing deliberate indifference lies with the prisoner. Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014) (citing Whitley v. Albers, 475 U.S. 312, 325 (1986)).

With respect to the first prong of the deliberate indifference inquiry, the R&R found that whether Cothran had knowledge of a substantial risk of serious harm depends on genuine issues of material fact. Defendants do not object to this finding. With respect to the second prong, the R&R found that whether Cothran disregarded the risk by failing to take reasonable measures to abate it also depended on genuine issues of material fact, making summary judgment unavailable. It is with the R&R's finding on this prong that defendants take issue. In their first objection, defendants argue that the R&R conducted an improper deliberate indifference analysis with respect to the second prong of the inquiry because the R&R (1) "ignored [ ] the evidence Defendants submitted to show

12

[that] they took steps to counteract the perceived staffing shortages and security-related issues" and (2) failed to consider the fact that "Brown did not submit any evidence to refute Defendants' actions, show [that] their actions were not reasonable, or show what more Defendants should have done." ECF No. 70 at 6. There are problems with defendants' argument both in fact and in law.

First, the law. Under the second prong of the deliberate indifference inquiry, Brown must show that Cothran "disregard[ed] th[e] risk [of injury] by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. In their objections, defendants improperly bifurcate the prong, arguing that Brown must present evidence that defendants disregarded the risk and evidence that Cothran's response was not reasonable. What the law makes clear, and what defendants misunderstand, is that these showings represent two sides of the same coin. In other words, evidence that Cothran disregarded a risk of injury is evidence that Cothran's response to the risk was not reasonable. Once a prisoner introduces evidence that a prison official disregarded a risk to prisoner safety, the law imposes no additional burden on the prisoner to present direct evidence that the prison official's response to the risk was unreasonable. The law is clear that the inquiry is singular and does not require a prisoner to jump two hurdles. See Hallinan v. Scarantino, 2020 WL 3105094, at *14 (E.D.N.C. June 11, 2020) ("Accordingly, as to the deliberate indifference analysis, the only issue is whether [the prison officials] knew of and disregarded the risk of harm, or, framed differently, whether they responded reasonably to the risk.").

Moreover, the law is clear that the second prong of the deliberate indifference inquiry, whether the prison official disregarded the risk, can be proven through

circumstantial evidence.  See Farmer, 511 U.S. at 842 (finding that the deliberate

indifference inquiry is "a question of fact" that can be proven through "inference from

circumstantial evidence"); see also Parrish, 372 F.3d at 303 (finding that a prisoner can

demonstrate that a prison official disregarded a risk to prisoner safety through

circumstantial evidence showing that the response to the risk was "patently inadequate").

As such, the law places no requirement on Brown to present direct evidence that

"refute[s] Defendants' actions, show[s] [that defendants'] actions were not reasonable, or

show[s] what more Defendants should have done."  ECF No. 70 at 6.  The defendants'

failure to cite any legal support for its proposition is unsurprising, as no court has ever

required a prisoner to shoulder a burden so cumbersome.  In requiring Brown to make

such a showing, defendants impermissibly heighten Brown's burden to establish a

failure-to-protect claim.  To survive summary judgment, the law requires that Brown

present sufficient evidence to create a genuine issue of material fact as to whether

Cothran disregarded a risk to prisoner safety.  Through his presentation of circumstantial

evidence, which the court discusses below, Brown has done just that.

      Turning to the facts, Brown has presented evidence that Cothran disregarded the

risk to prisoner safety in the form of circumstantial evidence demonstrating that Cothran

and Turbeville management's response to the understaffing crisis repeatedly failed to

abate the risk.  The docket includes a report ("the Roth Report"), drafted by Tim Roth in

connection with a settlement of different case, that details the staffing levels at

institutions run by SCDC.  As the R&R noted, the Roth Report contains considerable

evidence of a staffing crisis at Turbeville.  See, e.g., ECF No. 64-2 at 233 ("Security

staffing levels have been a critical concern at Turbeville for an extended period.").

14

Further, the Roth Report contains evidence that, during the time period in which Brown's attack occurred, the staffing shortage led to increased contraband possession at Turbeville, putting it well over the national average.  Id. at 237 ("As shown in the chart, weapons and cell phone related incidents at Turbeville have exceeded the average identified for the level 2 facilities reviewed.").  Turbeville also experienced higher rates of violence as a result of the staffing shortage.  Id. at 238 ("At Turbeville[,] the number of assault[-]related incidents involving inmates-on-employees reported in 2015, 2016 and 2017 was higher than the overall average reported for all the other level 2 facilities.  The number of inmate-on-inmate assaults was similar to the average.  The chart below reflects assaults occur at a higher than acceptable level.").  Further, Brown has presented a report prepared by his expert, James Aiken, a former warden, deputy warden, and deputy regional administrator in South Carolina.  In his report, Aiken opines that "key critical indicators [ ] should have caused Defendants alarm and immediately required urgent actions to stabilize the critical security posture and status of the facility," and that "the critical failures would have been avoided and abated only if appropriate elementary actions were taken by Defendants."  ECF No. 24-1 at 20.[3]

        In response to this evidence, defendants argue that they "took corrective action and/or actions to combat said issues" and that their response to the risk to prisoner safety was reasonable as a matter of law.  ECF No. 70 at 7.  Defendants are correct that evidence in the record reflects that Cothran and Turbeville management implemented several measures as a response to—or, more accurately, as a consequence of— the

---

[3] To the extent that defendants object to the R&R's reliance on Aiken's report, the court addresses that concern below, in its discussion of defendants' third objection.

staffing crisis.  For example, defendants note that the Roth Report includes a description of certain "operational initiatives" that Turbeville management implemented "in response to staffing levels."  ECF No. 64-2 at 235–237.  The problem with this argument is two-fold.  First, the Roth Report reflects data and findings gathered from 2015 to 2017, during which time the "operational initiatives" were in already in place.  Brown's evidence of understaffing, increased violence, decreased inmate supervision, and increased contraband possession at Turbeville demonstrates that the increased risk to prisoner safety existed <u>after</u> Cothran and Turbeville management implemented responsive measures.  In other words, the problems associated with understaffing persisted and the risk to prisoner safety remained substantial in spite of the "operational initiatives" on which defendants now rely.  As the law makes clear, the repeated failure of these measures to abate the risk to prisoner safety is itself circumstantial evidence of the "patent[] inadequacy" of Cothran's response.  See <u>Parrish</u>, 372 F.3d at 303 (finding that a prisoner can show a prison official's disregard of a perceived risk through the "patent[] inadequa[cy]" of his response).  While it is true that a prison official will not be liable under the Eighth Amendment where he "responded reasonably to the risk, even if the harm was not averted," <u>Farmer</u>, 511 U.S. at 844, evidence that the official's response repeatedly failed to abate the risk is itself circumstantial evidence that the response was not reasonable.  Such evidence, as Brown has presented here, creates a genuine issue as to whether Cothran disregarded the risk to prisoner safety by failing to take reasonable measures to abate it.

Moreover, the "operational initiatives" described in the Roth Report are more accurately described as natural consequences of a staffing shortage than active measures

16

implemented to abate the risk to prisoner safety.  The Roth Report states that Turbeville, in an effort to "maintain minimum operations at the facility", took certain measures, including expanding staff responsibilities, increasing staff hours, removing shift breaks, restricting prison access to common areas, and increasing time spent in lockdown.  ECF No. 64-2 at 235–237.  While some of these measures relate to prisoner safety, others are simply natural consequences of having less staff.  For example, one of the "initiatives" listed is that "post assignments go unfilled."  Id. at 236.  The court has a hard time imagining that allowing posts to be unmanned constitutes a "reasonable response" designed to abate the risk to prisoner safety.  Further, the Roth Report reflects that many of the responsive measures taken failed: for example, the Roth Report notes that Turbeville's initiative to expand staff responsibilities "result[ed] in fewer and less thorough pat-down searches, fewer building inspections, limited inmate escorts, delays and or cancellations in program and service delivery."  Id. at 235.  Therefore, not only has Brown presented evidence that creates a genuine issue of material fact as to this issue, but defendants' counter-evidence hardly establishes as a matter of law that Cothran took reasonable steps to abate the risk to prisoner safety.  In short, there is no dispute that Cothran and Turbeville responded to staffing crisis; however, the evidence that demonstrates the failure of that response creates a genuine issue of material fact as to whether Cothran's response was so "patently inadequate" as to constitute a conscious disregard of the risk.  As such, the court adopts the finding of the R&R and rejects defendants' first objection.[4]

---

[4] Defendants also argue in their first objection that "Brown [ ] offer[s] no factual evidence that corrective action was reasonably available to Cothran."  ECF No. 70 at 11. Of course, the law does not require Brown to show the availability of reasonable

## 2. Qualified Immunity

After determining that factual disputes preclude summary judgment on the issue of deliberate indifference, the R&R found that Cothran is not entitled to qualified immunity for Brown's § 1983 claims.  Specifically, the R&R stated that because "[q]uestions of fact exist with regards to whether Cothran violated [Brown]'s clearly established rights, [the Magistrate Judge] cannot determine at this time whether Cothran's actions were objectively reasonable."  ECF No. 62 at 43–44 (citing Kane v. Beaufort Cty. Sheriffs Dep't, 2015 WL 404570, at *5 (D.S.C. Jan. 29, 2015)).  As such, the R&R found summary judgment to be inappropriate.  Defendants object, relying on the same flawed theory that undergirds their first objection. The court agrees with the R&R that genuine issues of material fact preclude Cothran's qualified immunity defense and therefore rejects defendants' second objection.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether an official is entitled to a defense of qualified immunity, the court engages in a two-step sequence.  "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  Pearson v. Callahan, 555 U.S. 223, 232 (2009) (internal citations omitted)).  "Second, if the plaintiff has satisfied this first step, the court must decide

---

responses.  The law only requires Brown to show that Cothran disregarded a substantial and known risk to prisoner safety.  Moreover, defendants do not cite to any specific evidence demonstrating the unavailability of reasonable measures.  For the reasons discussed above, Brown has made sufficient showing to create a genuine issue of material fact with respect to that issue.

whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. Because "[d]isputed facts are treated no differently in this portion of the qualified immunity analysis than in any other context," the Fourth Circuit has made clear that "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." Vathekan v. Prince George's Cty., 154 F.3d 173, 180 (4th Cir. 1998) (citing Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995)).

Defendants do not object to the R&R's analysis on the first step of the inquiry. Instead, defendant object to the R&R's analysis of the second step, arguing that "it would not have been clear to an objectively reasonable prison official that his actions violated Brown's constitutional rights" because "[Cothran] took steps to combat the risk of harm caused by understaffing and security-related issues . . . ." ECF No. 70 at 16–17. In other words, defendants mirror the argument of their first objection, contending that because Cothran responded reasonably to the risk of harm as a matter of law, he could not have known that his actions violated Brown's constitutional rights. Defendants' second objection fails for the same reason as their first objection—genuine issues of material fact preclude a finding that Cothran's response to the risk to prisoner safety was reasonable. Because the court has concluded that genuine issues of material fact exist with respect to Cothran's response, it must conclude that Cothran is not entitled to qualified immunity. See Vathekan, 154 F.3d at 180 ("[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants."); see also Cox, 828 F.3d at 239 ("It has long been established that jail officials have a duty to protect inmates from a substantial and known risk of

harm, including harm inflicted by other prisoners."). In short, the same issues of fact that preclude summary judgment on Brown's § 1983 claim preclude Cothran's qualified immunity defense. Thus, the court rejects defendants' second objection.[5]

### 3. James Aiken's Expert Report

In recommending that the court deny summary judgment with respect to Brown's § 1983 claims, the R&R relied in part on the report of Brown's expert, Aiken. Defendants object generally to the R&R's reliance on Aiken's report, arguing that the report is mere "ipse dixit" and that "the R&R immediately and without reasoning, analysis, or methodology [ ] swallows the conclusory statements of [Aiken]." ECF No. 70 at 19. Puzzlingly, however, defendants do not object to any specific analysis of the R&R or any portion of Aiken's expert report. In other words, while defendants generally object to the R&R's reliance on Aiken's report, their objection fails to point the court to any specific error.[6] Instead, defendants include nine pages of law on the admissibility of expert testimony but fail to articulate a single sentence that applies that law to Aiken's report. Put differently, defendants argue that Aiken's report is nothing more than legal

---

[5] Defendants' second objection also argues that Cothran should be entitled to qualified immunity because Cothran "could not have envisioned the R&R's half[-]baked <u>res ipsa loquitur</u> version of § 1983 liability." ECF No. 70 at 18. The court dignifies this argument with a response only to note its hypocrisy. The R&R analyzes the law and evidence relevant to Brown's § 1983 claims in a twenty-four page discussion that culminates in its finding that genuine issues of material fact preclude summary judgment. The Magistrate Judge's well-reasoned and thorough analysis correctly applies well-established law to the material evidence and does nothing to create a new, "half-baked" theory of liability. Ignoring the glass house around them, defendants rely on an argument to which a description of "half-baked" would denote a considerable upgrade.

[6] Defendants' third objection does include citation to a specific sentence of the R&R, <u>see</u> ECF No. 70 at 19; however, that citation supports a tangential argument unrelated to Aiken's report and does not reflect a portion of the R&R that relies on Aiken's report. As such, the defendants' citation to the R&R in their third objection does not reflect a specific objection to the R&R's reliance on Aiken's report.

conclusions devoid of substantive analysis, while simultaneously supporting that legal conclusion with over 3,000 words of law and not a single word of substantive analysis. The irony is not lost on the court.[7]

In the absence of a specific objection, the court reviews the R&R's reliance on Aiken's report for clear error, giving consideration to defendants' general argument that the report is inadmissible as a legal conclusion under Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). The objective of FRE 702 and Daubert's gatekeeping requirement "is to ensure the reliability and relevancy of expert testimony." Kumho Tire, 526 U.S. at 152. "[T]he test of reliability is flexible," and "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Id. at 142 (citing General Electric Co. v. Joiner, 522 U.S. 136, 143 (1997)). The Supreme Court has made clear that a sufficiently reliable basis for admissible expert testimony can exist in a number of forms, including the expert's experience. Id. at 156. To be sure, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." United States v. McIver, 470 F.3d 550, 562 (4th Cir. 2006). However, the law is clear that an expert may close the analytical gap between his observations and his conclusions through "extensive and specialized experience," which may provide a reliable basis for the testimony. Kumho Tire, 526 U.S. at 156.

---

[7] Strangely enough, defendants' objection includes analysis into the opinion of an expert that has not been named in this case, who provided an expert opinion, presumably in a different case, about deformed ductwork. See ECF No. 70 at 25 ("McGinley simply states that he would expect the ductwork to have been deformed due to over pressurization."). This clear cut-and-paste error from defendants' counsel underscores the perfunctory nature of their third objection. The court suggests that defendants' attorneys actually read their brief before they file it.

In this case, the R&R did not commit clear error in relying in part on Aiken's Report.  Aiken clearly qualifies as an expert witness under Fed. R. Evid. 702—he began his "correctional career" in 1971 and spent the next forty-five years in various correctional-administration roles on both national and state levels.  See ECF No. 24-1 at 23.  As the R&R noted, Aiken "has over 47 years of experience in the assessment and restoration of facilities and systems that have experienced chronic and acute security, operational critical events and management shortfalls."  ECF No. 62 at 32 (citing ECF No. 24-1 at 2–3) (internal quotation marks omitted).  Aiken's experience in the field of correctional administration provides a reliable basis from which he reached his conclusions.  While Aiken's report arguably contains some legal conclusions, see ECF No. 24-1 ("In a confinement operational context, the Defendants South Carolina Department of Corrections, and Warden Cothran were deliberately indifferent, callous, wanton, and/or grossly negligent . . . ."), more numerous in the report are opinions based on facts and data, interpreted through the lens of Aiken's experience.  The R&R makes clear that it did not blindly accept Aiken's opinions on the law, but rather afforded weight to Aiken's opinions that were rooted in his analysis of the facts.  See, e.g., ECF No. 62 at 32 ("Mr. Aiken opines that 'Defendants ignored clear and precise dangerous critical security precursor/indicators (triggers) that were obviously apparent, clear and precise.'").

Moreover, the R&R relies on Aiken's report to support its finding on the first prong of the deliberate indifference analysis, whether Cothran knew of a substantial risk to inmate safety.  As discussed above, defendants do not substantively object to the R&R's finding on that prong.  See ECF No. 70 at 5 ("While Defendants disagree with the

conclusion of the R&R . . . the R&R discussed evidence in the record to find that a genuine issue of material fact existed as to the first prong of the appropriate analysis."). The R&R does not cite to Aiken's report in its analysis of the second prong of the deliberate indifference analysis, whether Cothran disregarded the risk to prisoner safety, the prong to which defendants' objections apply. The court need not determine the admissibility of each individual opinion in Aiken's report. It is sufficient for the purposes of this order to conclude that the R&R's reliance on the report was not clearly erroneous. So finding, the court rejects defendants' generalized objection to the R&R's reliance on Aiken's report.

     Having rejected each of defendants' objections relating to Brown's § 1983 claims, the court adopts the R&R's recommendation that defendants' second motion for summary judgment be denied with respect to those claims. As such, Brown's § 1983 claims against Cothran in his individual capacity survive summary judgment and continue to trial. The court now turns to defendants' final objection regarding Brown's claim for injunctive relief.

#### 4. Brown's Claims for Injunctive Relief

     Brown's complaint includes a claim for injunctive relief against both SCDC and Cothran. With respect to SCDC, the R&R recommends denying defendants' motion for summary judgment with respect to Brown's claim for injunctive relief, explaining that "Defendants offer no argument for the dismissal of [Brown]'s claim for injunctive relief against SCDC under state law." ECF No. 62 at 48. Additionally, the R&R found that summary judgment should be denied with respect to Brown's claim for injunctive relief

against Cothran in his official capacity because Cothran was not entitled to Eleventh Amendment immunity, and defendants did not argue that the claim otherwise failed.

Now, defendants object to the R&R's recommendation, arguing for the first time that Brown's claim for injunctive relief fails as a matter of law because "Brown has been released from SCDC custody." ECF No. 70 at 28. Further, defendants note that Brown's claim for injunctive relief against Cothran must fail because "Cothran has retired from SCDC, and therefore is no longer a Warden at Turbeville[.]" Id. In support of their argument, defendants point to Brown's deposition testimony, in which he states that he was at Turbeville for a period of five-and-a-half years, implying that he is no longer an inmate there. ECF No. 54-2, Brown Depo. 6:2–5. Brown has not disputed this fact, and there is no evidence in the record that indicates that Brown is currently an inmate at Turbeville. Further, defendants are finally correct on the law. See Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (finding that a prisoner's transfer from the subject correctional facility moots his claim for injunctive relief).

As such, the court finds itself at a procedural fork in the road[8] and must choose between the lesser of two evils. The court must either grant summary judgment on Brown's claim for injunctive relief in favor of a party who did not timely request it or deny summary judgment on procedural grounds and send legally untenable claims to a trier of fact. The court determines that the latter is the greater evil, so it proceeds with the former. Thus, the court rejects the R&R's recommendation with respect to Brown's

---

[8] As the sagacious Yogi Berra once said, "When you come to a fork in the road, take it."

24

claim for injunctive relief, grants summary judgment in favor of defendants with respect to the same, and dismisses the claim.

After the court's resolution of the motions for summary judgment, three of Brown's claims survive and proceed to trial: (1) a § 1983 claim against Cothran in his individual capacity based on Cothran's failure to protect Brown, (3) a § 1983 claim against Cothran in his individual capacity based on Cothran's failure to adequately train and supervise his employees, and (4) a claim against SCDC for negligence and gross negligence under the SCTCA.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS IN PART** and **REJECTS IN PART** the R&R, **DENIES** defendants' first motion for summary judgment, and **GRANTS IN PART** and **DENIES IN PART** defendants' second motion for summary judgment in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 3, 2020**
**Charleston, South Carolina**